UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

HOLLY BLINKOFF,
    Plaintiff,

v.

NICOLE DORMAN, ET AL.,
    Defendants.

CIVIL ACTION NO.
3:06cv00607 (SRU)

# MEMORANDUM OF DECISION

Holly Blinkoff seeks relief from the final judgment in *Blinkoff v. Torrington Planning & Zoning, et al.*, 97cv1345 (SRU) ("the prior action"), pursuant to Rule 60(b) of the Federal Rules of Civil Procedure. She alleges that the defendants committed fraud upon the court when they procured the absence of a witness at trial. Blinkoff's request for relief arose in an action asserting civil RICO claims against, inter alia, employees of the City of Torrington along with attorneys who defended Torrington in the prior action. On August 21, 2007, I heard oral argument on motions to dismiss Blinkoff's claims. I dismissed the RICO claims, but denied the defendants' motions to dismiss Blinkoff's claim for relief under Rule 60(b). In the absence of a formal motion for Rule 60(b) relief, I have treated Blinkoff's presentation of evidence as an oral motion for Rule 60(b) relief.

On December 3, 2007, I held a hearing to determine whether defendants committed fraud on the court such that Blinkoff is entitled to Rule 60(b) relief from judgment in the prior action. Because Blinkoff has failed to prove that the defendants committed fraud on the court, her request for relief is DENIED. Treating that hearing as a bench trial, I set forth below findings of fact and conclusions of law as required by Rule 52 of the Federal Rules of Civil Procedure.

**II.**     **Factual Background**

In 1997, Blinkoff filed a civil action against the City of Torrington, claiming that the city deprived her of various rights by selectively enforcing zoning ordinances against her regarding her operation of a quarry. I presided over the jury trial of Blinkoff's claims in April 2002.

In connection with the trial, Blinkoff subpoenaed Raymond Carpentino, formerly the City Planner for the City of Torrington. (Pl.'s Civil RICO Case Statement ("RICO Statement"), Ex. 1 (showing witness fees).) According to Blinkoff, her attorney, John Williams, planned to examine Carpentino regarding whether the city zoning ordinances at issue were selectively enforced against her quarry. On Friday, April 5, 2002, Carpentino was seated outside the courtroom when two attorneys, including Attorney Dorman, defense counsel for the City of Torrington and a defendant in the instant action, told him he would not be needed to testify that day. (RICO Statement, Ex. 3 ("Carpentino Letter").) Later that afternoon, Dorman called Carpentino. The contents of that call are disputed by the parties, as are the contents of other calls by Dorman to Carpentino's home and work phone numbers throughout the course of the 2002 trial. I address that factual dispute below.

On April 8, 2002, during a scheduling discussion with the court, Williams indicated that he planned to call Carpentino as a witness during the morning of Friday, April 12, 2002. (Trial Tr. 137, Apr. 8, 2002.) Dorman asked, "If he has a conflict [can he come] in Friday afternoon?" Williams stated that "would be all right." (*Id.*) Sack indicated that "We can have him here Friday afternoon." *Id.* at 138.

On April 10, 2002, Williams said that he understood that Carpentino would be unavailable until two in the afternoon on Friday. (Trial Tr. 190, Apr. 10, 2002.) I indicated that if the plaintiff finished with her case except for Carpentino on Friday morning, then the defense

2

would begin their case, and Blinkoff could call Carpentino out of order once he arrived. (*Id.* at 190-92.)

On April 12, 2002, Williams examined several witnesses during the morning. (Trial Tr. 9, 17, 21, 56, Apr. 12, 2002.) Following the direct examination of plaintiff's witness, John Carter, the jury was excused at 11:00 a.m., and Williams said that the plaintiff's case was done except for Carpentino. (*Id.* at 61.) At that time, Williams also said he was not sure he was going to call Carpentino. (*Id.*) Williams asked where Carpentino was, and Attorney Sack reminded him that Carpentino had a doctor's appointment. (*Id.* at 63.) Williams then said he would review his materials and decide whether he was ready to rest the plaintiff's case. (*Id.*) After a short recess, the plaintiff rested without calling Carpentino. (*Id.* at 64.)

The jury returned a verdict for the defendants, and Blinkoff now moves for relief from the final judgment in the prior action, pursuant to Rule 60(b) of the Federal Rules of Civil Procedure. Blinkoff alleges that defendants Sack, Dorman, and Vasko, who were all defense counsel in the prior action, tampered with Carpentino's testimony by procuring his absence from court during the trial. She alleges that the attorneys told Carpentino that he would not be needed at trial and that Williams was unaware of the representations made to Carpentino. She argues that the defendants committed fraud on the court, and that their alleged actions rendered the court and the jury unable to fully and fairly hear and decide the prior action.

A. <u>Representations made to Carpentino</u>

At the December 3 hearing, Carpentino, Dorman and Sack all testified about their recollections of communications between Carpentino and the defendant attorneys throughout the course of trial in the prior action. Carpentino testified that on April 5, 2002, in the hallway of the

3

courthouse, Dorman, along with Attorney Vasko, told him they would not need him as a witness that day. He also testified that Dorman phoned him later that day and told him that he would not be needed; Carpentino assumed that meant he would not be needed for the remainder of the trial.

When he testified regarding events surrounding the trial in the prior action, Carpentino relied on a letter that he wrote to Blinkoff in June 2004 describing those events.[1] It became clear that Carpentino's present recollection of the communications he had with the defendant attorneys at the time of trial over five and one-half years ago, mostly in the form of one- or two-minute phone conversations, was spotty and unreliable. Both Carpentino's June 2004 letter and his December 3 courtroom testimony demonstrated confusion over which days of the week and which dates he was present at court and spoke with the defendant attorneys, with which attorneys he spoke, whether they told him that he would not be needed for the remainder of a particular day of trial or the remainder of the trial, and what his availability actually was throughout the course of that trial.

After Carpentino testified, Dorman testified regarding the same subject matter. She testified that, in the corridor outside the courtroom on Friday, April 5, 2002, she told Carpentino that he was dismissed for the day. She additionally testified that she phoned Carpentino later that day and several times over the course of the following week, and reached him on some but not all of those occasions.[2] Dorman testified that, when she and Carpentino did speak, they discussed whether and when he might be needed to testify in the trial, and his availability to do so.

---

[1] The defendants, through their questions to Carpentino, challenged the reliability of that letter. They questioned Carpentino regarding the circumstances that led to his writing the letter as well as why, although the letter is notarized, the notary provided neither the date on which she stamped the letter nor an attestation that the contents of the letter were sworn to in front of her.

[2] Although Blinkoff argues that Dorman may not have in fact spoken with Carpentino each time that she phoned him, Blinkoff does not dispute that Dorman phoned Carpentino several times between April 5, 2002 and April 12, 2002. Blinkoff also does not dispute that Dorman did speak with Carpentino on at least some of those occasions.

4

Blinkoff has not presented credible evidence that the defendant attorneys tampered with Carpentino by notifying him that he would not be needed for the remainder of the trial following his brief appearance outside the courtroom on the morning of April 5, 2002. I find that Dorman did attempt to contact Carpentino numerous times following that morning, and that she spoke with him at least some those times. Blinkoff did not produce any evidence to suggest, and I cannot imagine any reason, why Dorman would have repeatedly phoned Carpentino except to discuss whether he was needed and available throughout the trial.[3] If Dorman and the other defendant attorneys had in fact told Carpentino not to appear for the remainder of the trial, they would have had no reason to contact him repeatedly. The transcript from the prior trial shows that the defendant attorneys made a number of representations on the record regarding Carpentino's availability. I find that those representations were made in good faith then, and that if Carpentino – who at the time of the prior trial did not work for the City of Torrington – discussed his availability with Dorman, Sack and Vasko, it was because the attorneys were trying to find out when he *was* available. If they told Carpentino to go home on April 5 and never to return, they would have had no reason later to know if and when he was available during the following week.

B. <u>Representations to Williams</u>

Blinkoff alleges and testified that the defendant attorneys made misrepresentations to Williams regarding Carpentino's availability, which prevented Williams from properly presenting her case at trial and which prevented the court and the jury from fully and fairly

---

[3] Even Carpentino's June 2004 letter (RICO Statement, Ex. 3) indicates that, when he was excused on April 5, Dorman asked if he "would come back the following day (Friday) [sic]."

considering relevant evidence during the trial. Blinkoff has failed, in response to questions that I asked and questions from defense counsel, to identify any intentional misrepresentations that the defendant attorneys made during the prior trial to Williams. She alleges that Williams was unaware that Carpentino was present outside the courtroom on the morning of April 5, 2002, and that he believed Carpentino would be present to testify on the morning of April 12, 2002. Even if I credit Blinkoff's testimony regarding Williams's belief and knowledge, Blinkoff produced no evidence through her own testimony or otherwise that the defendant attorneys made any affirmative misrepresentations to Williams. Williams may have been confused or mistaken, but I find that Dorman, Sack, and Vasko did not tell Williams either that Carpentino was not available when in fact he was, or that Carpentino would be available at times he actually was not. The trial transcript does not contain any such misrepresentations, and Blinkoff did not identify any in her briefs, during numerous phone conferences, or in her sworn testimony at the December 3 hearing.

**II. Discussion**

Rule 60(b) of the Federal Rules of Civil Procedure reads as follows:

**(b) Grounds for Relief from a Final Judgment, Order, or Proceeding**. On motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons:

(1) mistake, inadvertence, surprise, or excusable neglect;

(2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b);

(3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party;

(4) the judgment is void;

(5) the judgment has been satisfied, released or discharged; it is based on an

6

> earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or
>
> (6) any other reason that justifies relief.

Rule 60(b) provides six grounds for relief from a judgment. Only two of those grounds might apply here: Rule 60(b)(3) provides relief from a final judgment based on the "fraud . . . misrepresentation, or other misconduct of an adverse party," and Rule 60(b)(6) provides relief from a final judgment based on "any other reason justifying relief from the operation of judgment." Rule 60(b) also provides that courts retain the power to "entertain an independent action to relieve a party from a judgment . . . or to set aside a judgment for fraud upon the court."

As discussed below, if Blinkoff's motion is considered as a Rule 60(b)(3) motion, it is barred by the one-year limitations period. Next, Blinkoff cannot resort to a Rule 60(b)(6) motion to get around the one-year limitations period applicable to Rule 60(b)(3). Finally, Blinkoff's evidence cannot sustain an "independent action" under Rule 60(b).

A.   Failure of Proof

Blinkoff has failed to prove that defendants committed fraud or made misrepresentations to her attorney or to the court. Because Blinkoff has not proven fraud or misrepresentations, she is not entitled to relief under Rule 60(b). More specifically, Blinkoff's request for relief also fails for the reasons below.

B.    Effect of One-year Limitations Period

Rule 60(b)(3) of the Federal Rules of Civil Procedure allows a party to seek relief from a final judgment based on the "fraud . . . misrepresentation, or other misconduct of an adverse party." Rule 60(b) also requires that a motion based on Rule 60(b)(3) must be made "not more

7

than one year after the judgment, order, or proceeding was entered or taken." This one-year limitations period is "absolute." *Warren v. Garvin*, 219 F.3d 111, 114 (2d Cir. 2000) (quoting 12 James Wm. Moore, *Moore's Federal Practice* § 60.65[2][a], at 60-200 (3d ed. 1997)). Therefore, Blinkoff's Rule 60(b) motion cannot survive as a Rule 60(b)(3) motion based on fraud, misrepresentation or other misconduct of an adverse party, because her motion was not made within one year from the date the judgment was entered.

The one-year limitation period in Rule 60(b) does not apply to motions under Rule 60(b)(6) or to other independent actions.

C. <u>Availability of Rule 60(b)(6)</u>

"Rule 60(b)(6) only applies if the reasons offered for relief from the judgment are not covered under the more specific provisions of Rule 60(b)(1)-(5)." *Warren v. Garvin*, 219 F.3d 111, 114 (2d Cir. 2000) (citing *Liljeberg v. Health Serv. Acquisition Corp.*, 486 U.S. 847, 863 & n.11.). "In particular, Rule 60(b)(6) may not be used to circumvent the 1-year limitations period that governs Rule 60(b)(1)." *Id.* (citing 12 *Moore's Federal Practice* § 60.48[2]). In *Warren*, the plaintiff attempted to use Rule 60(b)(6) to avoid the one-year limitations period that applied to his motion under Rule 60(b)(1), which sought relief based on excusable neglect. *Id.* at 115. The court held that because the basis of Warren's Rule 60(b) motion would have satisfied Rule 60(b)(1), he had to proceed under that subsection of the Rule, and not the more general provision of Rule 60(b)(6). *Id.*

Blinkoff alleges that the defendants used affirmative misrepresentations to keep Carpentino away from court so that he would not be able to testify. There is no doubt that the alleged conduct would fall under Rule 60(b)(3) as "fraud . . . misrepresentation, or other

8

misconduct of an adverse party." Therefore, just as the plaintiff in *Warren* could not use Rule 60(b)(6) to get around the one-year limitations period applicable to Rule 60(b)(1), Blinkoff cannot use Rule 60(b)(6) to get around the same one-year limitations period of Rule 60(b)(3).

        D.  Independent Actions under Rule 60(b)

None of the six explicit justifications in Rule 60(b) afford relief here, so Blinkoff's motion can be granted only if it provides grounds for relief as an independent action for fraud upon the court. An independent action is available only to prevent a "grave miscarriage of justice." *United States v. Beggerly*, 524 U.S. 38, 47 (1998). "'Fraud upon the court,' as distinguished from fraud on an adverse party, is limited to fraud which seriously affects the integrity of the normal process of adjudication." *Gleason v. Jandrucko*, 860 F.2d 556, 559 (2d Cir. 1988). Fraud upon the court is something that "threatens the very integrity of the judiciary and the proper administration of justice." *Id.*

The level of fraud that is required to sustain an action for fraud upon the court is quite high. *Id.* at 559-60 (holding that allegations of nondisclosure during pretrial discovery and perjury during trial are not enough to sustain an action for fraud upon the court). Furthermore, parties may not make a motion under Rule 60(b) to address issues that could have been litigated during the earlier action. *Id.* at 560; *Weldon v. United States*, 70 F.3d 1, 5 (2d Cir. 1995).

In light of the high standards required to sustain an independent action under Rule 60(b), Blinkoff's motion fails. Even viewing the facts in the light most favorable to Blinkoff, the worst that can be said of the defendants' conduct is the following: (1) the defendants failed to inform Blinkoff's attorney that Carpentino was in the courthouse on April 5, 2002, although there is no indication that Attorney Williams asked whether Carpentino was available, or that he was

9

prepared to call Carpentino that day; (2) after court adjourned on April 5, the defendants informed Carpentino that he would not be needed for trial, even though they knew that Williams planned to call him. (As discussed above, however, I find that the defendants actually did not tell Carpentino that he would not be needed throughout the entire trial and that they did not make misrepresentations to opposing counsel or the court that could form the basis for relief under Rule 60(b).)

This alleged conduct does not rise to the level of a grave miscarriage of justice that would support an independent action for fraud upon the court. If non-disclosure of material information during discovery does not sustain an action for fraud upon the court, *Gleason*, 860 F.2d at 559-60, then the mere non-disclosure of the fact that a witness is seated outside the courtroom cannot sustain such an action either. Indeed, because Attorney Williams never asked whether Carpentino was available on April 5, 2002, the defendants had no obligation to announce Carpentino's presence.

Also, if the defendants told Carpentino that he would not be needed for trial, knowing that to be false, it would not constitute fraud upon the court. Carpentino was under subpoena by Blinkoff, and she could have compelled his attendance in court, despite any statements made to Carpentino that he would not be needed. At the very least, Williams could have made representations on the record that Carpentino's testimony was needed and that he could not rest Blinkoff's case without Carpentino's testimony. Instead, Williams decided to rest the plaintiff's case without Carpentino's testimony despite defendants notifying him in open court that Carpentino would be available later that afternoon.

If the defendants had bribed Carpentino in order to ensure that his testimony would not

10

help Blinkoff even if he testified, that *might* be something that would corrupt the integrity of the judicial process and rise to the level of fraud upon the court. *Cf. Samples v. United States*, 121 F.2d 263, 265 (5th Cir. 1941). Likewise, if the defendants had sent Carpentino on an all-expenses paid trip to a jurisdiction where he would not be subject to the subpoena power of the court, that might harm the integrity of the judicial process. Here, there is no evidence that the defendants tried to influence how Carpentino would testify if he were called, or that they influenced his absence from this court's jurisdiction. Therefore, Carpentino was available to Blinkoff if she or her counsel had insisted that he testify.

Finally, even if the conduct of the defendants rose to the level of fraud upon the court, Blinkoff's motion would be improper. In the Second Circuit, a Rule 60(b) motion for fraud upon the court is unavailable when the movant had an earlier opportunity to litigate the issue upon which the Rule 60(b) motion is based. *Gleason*, 860 F.2d at 560; *Weldon*, 70 F.3d at 5. The record of the trial shows that Williams voluntarily chose to rest the plaintiff's case on April 12, 2002 without attempting to call Carpentino. When the plaintiff rested, Williams was under the impression that Carpentino would appear at 2:00 p.m. Blinkoff has not shown that Williams rested believing that it would be futile to attempt to compel Carpentino's testimony. If Carpentino was as crucial a witness as Blinkoff now alleges, Williams probably should not have made the strategic decision to rest absent Carpentino's testimony.[4] It would have been much

---

[4] Blinkoff has argued that, because the transcript of the prior trial reflects my request to all counsel that they have witnesses ready so as to avoid inconveniencing the jury, Williams rested his case without calling Carpentino so as not to upset me or inconvenience the jury. Williams made no indication at the time he rested his case that his preference was to call Carpentino. He had ample opportunity at that point and throughout the course of the trial to ensure that Carpentino, whom Williams had subpoenaed, would testify at some point in time. Williams made the strategic decision instead to rest without calling Carpentino. Whether Williams made that decision because he mistakenly believed Carpentino was unavailable or because he felt the plaintiff had proven her case without Carpentino's testimony, he did not make that decision based on misrepresentations from the defendants.

more efficient for Williams to insist that the defendants present Carpentino at the original trial than to have Blinkoff attempt to litigate the issue in the separate motion now before me. *Gleason* and *Weldon* require Blinkoff to choose the more efficient option of litigating the issue in the original trial, and her attorney's failure to do so precludes this Rule 60(b) motion five years later.

  E.  <u>Blinkoff's Motion for Judicial Notice</u>

On December 11, 2007, Blinkoff filed a motion requesting that I take judicial notice of the certified transcript of a November 26, 2007 pretrial proceeding in this case. That motion (**doc. #223**) is GRANTED.

In her motion, Blinkoff raises concerns regarding Dorman's statements on November 26 and whether they differed from her testimony on December 3. Dorman's December 3 testimony was under oath and was subject to the adversarial process via Blinkoff's cross-examination. I considered those factors, along with all other record evidence in this matter, when making the above factual findings.

In addition, Blinkoff reargues her motion for Williams to testify, which I denied at the December 3 hearing. Blinkoff stated that Williams would testify that he was unaware of Carpentino's presence in the courthouse on April 5, 2002. As discussed above, even if true, Williams's lack of knowledge of Carpentino's presence does not establish misrepresentations to Williams or to the court, and does not establish fraud on the court. To the extent that Blinkoff now asks me to reconsider my ruling on her earlier motion for Williams's testimony, that request is denied.

## III. Conclusion

For the foregoing reasons, Blinkoff's Motion for Judicial Notice (**doc. #223**) is

GRANTED; Blinkoff's Motion for Relief from Final Judgment under Rule 60(b) (**doc. #218**) is DENIED.

When I dismissed Blinkoff's RICO claims, I did so without prejudice to her re-filing those claims after a ruling on her claim for relief under Rule 60(b). Now that I have heard the evidence of alleged fraud, it is apparent that Blinkoff has no valid claim under RICO. Accordingly, repleading would be futile and the dismissal of her claims is converted to a dismissal with prejudice. The clerk shall enter judgment in favor of the defendants and shall close this file.

It is so ordered.

Dated at Bridgeport, Connecticut, this 12th day of December 2007.

      /s/ Stefan R. Underhill
      Stefan R. Underhill
      United States District Judge